UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

MATT CRUSAN and MELISSA CRUSAN, husband and wife,
each on their own behalf and on behalf of all other
similarly situated passengers aboard the Carnival Triumph,

    Plaintiffs,
v.                                                          **CLASS ACTION**

CARNIVAL CORP.,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Matt Crusan and Melissa Crusan, husband and wife, each on their own behalf, and on behalf of all other similarly situated passengers aboard the Carnival Triumph, sues Defendant, CARNIVAL CORP., and for good cause alleges:

### Preliminary and Jurisdictional Allegations

1. Plaintiffs are residents of the state of Oklahoma and Defendant Carnival is a corporation incorporated under the laws of Panama having its principal place of business in Florida.

2. The matter in controversy exceeds the required amount, exclusive of interest and costs, and is a class action brought under this Honorable Court's jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  In the event that class status is not certified, then this matter is brought under the admiralty and maritime jurisdiction of this Honorable Court.

3. Defendant, Carnival Corporation, at all times material, personally or through an agent;

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this state;

    d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

    e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

    f. The Defendant was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard the vessel, Carnival Triumph.

4. Defendant is subject to the jurisdiction of the Courts of this state.

5. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

6. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel, Carnival Triumph.

7. On or about February 10, 2013, Plaintiffs and other similarly situated persons were paying passengers on defendant's vessel which was in navigable waters.

8. At all material times, Carnival allowed a hazardous condition to exist on its vessel which it knew or should have known was likely to cause injury, harm and damages to its passengers. More specifically, Carnival knew or should have known that the vessel Triumph was likely to experience mechanical and/or engine issues because of prior similar issues. A cruise in mid-January 2013 on the Triumph was affected by propulsions issues and on January 28, 2013, there was an incident which resulted in damage to the Triumph's ship's propulsion system and generators. Notwithstanding said issues, Carnival knowingly decided to embark on the subject voyage.

9. On or about February 10, 2013, Plaintiffs and all other similarly situated passengers were at sea aboard the Carnival Triumph when the vessel's engine room caught fire. This engine room fire disabled the Triumph's propulsion system along with the vessel's generators and other necessary machinery. As a result, the vessel was left without power and other necessities to make the vessel reasonably safe for passengers, including climate control, plumbing, waste water disposal, and refrigeration for food storage. Further, the vessel was left adrift at the mercy of the sea with no way to maneuver.

10. From February 10, 2013 until February 15, 2013, Plaintiffs and all other similarly situated passengers were harmed and/or injured as a result of the engine room fire by way of being stranded at sea without necessary services and supplies. During this time, Plaintiffs and all other similarly situated passengers were forced to sleep on deck and/or in other communal areas on the vessel, relieve themselves into buckets, bags[1], showers, sinks, were given spoiled or rotting food that was unfit for reasonably safe human consumption, and were generally forced to live in squalid conditions that created a severe risk of injury, illness and/or disease. Due to the lack of working plumbing and sanitation systems on the vessel, sewage and/or putrid water filled with urine and feces leaked onto floors, walls, and ceilings. This sewage and/or human waste sloshed around the vessel as the vessel listed while drifting and/or while under tow. Conditions became increasingly unbearable each day due to the lack of a working ventilation system on the vessel, leading to noxious odors and gasses that caused numerous passengers to vomit and/or become nauseous. At all times material, Plaintiffs and all similarly situated persons were fearful for their lives while they were trapped aboard defendant's vessel.

---

[1] Buckets and bags of human waste were left out in the open in public passenger spaces.

11. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs and all others similarly situated were placed in an immediate risk of physical harm.  Said risk of physical harm included but is not limited to:  disease, dehydration, illness, injury, and/or death.

12. Defendant's negligence and/or gross negligence and/or intentional conduct caused severe emotional distress in the Plaintiffs and all others similarly situated, such as fear and anxiety.  These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, and nightmares.

13. Carnival caused and/or worsened all of the above by acting grossly negligent, intentionally, wantonly, and/or recklessly, by failing to arrange for the reasonable disembarkation of passengers in the nearest port of call after the Triumph lost power and/or by choosing to tow the passengers to a dramatically further port of call for several days.  More specifically, at the time of the fire, the vessel was roughly 150 miles from port in Progreso, Mexico and roughly 500 miles from a port in Mobile, Alabama.  Carnival initially decided to return to Mexico, but later decided to travel all the way to Mobile, Alabama.  This decision was motivated solely by financial gain and Carnival's convenience.  Were Carnival to have been towed back to Mexico, Carnival would have needed a second tow back to the United States, at significant additional expense.  Furthermore, instead of taking the more than 3,000 passengers back to Galveston, Texas (where the cruise began), Carnival decided to go to Mobile, Alabama, because that is where the repair facility is.  In so doing, Carnival forced the passengers to further harm and inconvenience by putting them on a seven (7) hour bus ride back to Galveston.

These callous, intentional decisions subjected the Plaintiffs and all passengers similarly situated aboard the Triumph to five (5) days of deplorable, nightmarish conditions at sea. Such wanton, willful and outrageous conduct on the part of the defendant exposes them to punitive damages, which the Plaintiffs seek herein. *See Lobegeiger v. Celebrity Cruises, Inc.,* 2011 WL 3703329, 2011 U.S. Dist. LEXIS 93933 (S.D. Fla. Aug. 23, 2011).

## Class Action Allegations

14. This action is brought by Plaintiffs on their own behalf, and on behalf of all others similarly situated, under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

15. The class so represented by the Plaintiffs in this action, and of which Plaintiffs are members, consists of all passengers stranded aboard the Carnival Triumph as a result of the engine room fire which occurred on the vessel on February 10, 2013.

16. The class of passengers was subjected to distress both physical and emotional, pain and suffering, along with physical and emotional injury as a result of Defendant Carnival's negligence and/or gross negligence and/or intentional conduct.

17. The exact number of members of the class is not known, but it is estimated that there are in excess of 3,000 members. The class is so numerous that joinder of all members is impracticable. This action satisfies the requirements of Rule 23(a)(1).

18. There are common questions of law and fact that relate to and affect the rights of each member of the class and the relief sought is common to the entire class. The same misconduct on the part of Defendant Carnival caused the same or similar injury to each class member. All class members seek damages under the general maritime law of the

United States for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress and Negligence. Accordingly, this action satisfies the requirement of Rule 23(a)(2).

19. The claims of Plaintiffs are typical of the claims of the class, in that the claims of all members of the class, including Plaintiffs, depend upon a virtually identical showing of the acts and omissions of Defendant Carnival, giving rise to the right of Plaintiffs to the relief sought herein. Defendant Carnival was at all times material hereto engaged in the same conduct to the detriment of the entire class of Plaintiffs. Accordingly, this action satisfies the requirements of Rule 23(a)(3).

20. Plaintiffs are the representative party for the class, and are able to, and will, fairly and adequately protect the interests of the class. There is no conflict between Plaintiffs and other members of the class with respect to this action, or with respect to the claims for relief herein. The attorneys for Plaintiffs are experienced and capable in the field of maritime claims for cruise ship passenger injury, including class actions, and have successfully represented claimants in other litigation of this nature. Two of the attorneys designated as counsel for Plaintiffs, Jason R. Margulies and Michael A. Winkleman, will actively conduct and be responsible for Plaintiffs case herein. Accordingly, this action satisfies the requirement of Rule 23(a)(4).

21. This action is properly maintained as a class action under Rule 23(b)(3) inasmuch as questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy. In support of the foregoing, Plaintiffs allege that common issues predominate and can be determined

on a class-wide basis regarding Carnival's failure to exercise reasonable care under the circumstances by, *inter alia*: failing to maintain the Triumph in a reasonably safe condition, allowing Plaintiffs to embark on the subject vacation cruise despite knowing the Triumph to not be reasonably fit for service, failing to have adequate policies or procedure in place to prevent the engine fire which disabled the Triumph and/or to prevent the complete loss of services necessary to maintain reasonably safe living conditions for passenger aboard the vessel in an emergency; and/or the decision by Carnival to tow the vessel to Alabama rather than a far closer port which intentionally exposed the passengers to many more days on the vessel than was reasonable and necessary.

22. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is unlikely that individual plaintiffs would assume the burden and the cost of this complex litigation, and Plaintiffs are not aware of any class members who are interested in individually controlling the prosecution of a separate action. The interests of justice will be served by resolving the common disputes of the class members with Carnival in a single forum, and individual actions by class members, many of whom are citizens of different states would not be cost effective. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

23. Carnival's passenger ticket contract contains a contractual provision which attempts to limit its passengers' right to file their claims against Carnival as a class action, but said provision should be deemed void because such an attempt by Carnival to limit its liability

to passengers violates 46 U.S.C. 30509.[2] *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335–36 (11th Cir. 1984).

24. Additionally and/or alternatively, the above provision should be deemed null and void as Carnival acted intentionally[3] by both putting passengers to sea in a ship which it knew or should have known was not seaworthy and/or by failing to arrange for the reasonable disembarkation of passengers in the nearest port of call after the *Triumph* lost power and instead intentionally causing passengers to suffer for several days as the *Triumph* was towed to a port that was more cost-effective for Carnival.

## COUNT I – NEGLIGENCE

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs 1 through 24 as though alleged originally herein and further allege:

25. It was the duty of Defendant Carnival to provide Plaintiffs and all others similarly situated with reasonable care under the circumstances.

26. On or about February 10, 2013, and continuing until February 15, 2013, Carnival and/or its agents, servants, and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances.

27. Plaintiffs were injured due to the fault and/or negligence of Defendant Carnival, and/or its agents, servants, and/or employees as follows:

   a. Failure to adequately inspect the Carnival Triumph, its engines and machinery, so as to prevent the failure of shipboard systems necessary to

---

[2] § 30509(a)(1)(A) states: "The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting [...] the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents."

[3] "[C]ontractual exculpatory clauses absolve the exculpated party only from ordinary negligence and should not be construed to include loss or damage resulting from intentional or reckless misconduct, gross negligence, or the like." *In re New River Shipyard, Inc.*, 355 B.R. 894, 904 (Bankr. S.D. Fla. 2006)

ensure the reasonable safety of its passengers; and/or

b. Failure to adequately maintain the Carnival Triumph, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

c. Failure to adequately design and/or construct the Carnival Triumph, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

d. Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

e. Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan that protected the health and welfare of passengers during an emergency failure of shipboard systems; and/or

f. Failure to warn passengers of dangers about which Carnival knew or should have known, specifically about the unseaworthy conditions which existed on the Carnival Triumph prior to the subject voyage including, but not limited to, prior problems with the Carnival Triumph's engines and generators; and/or

g. Failure to determine hazards that existed in the Carnival Triumph's engine room that led to the loss of power and other necessary services aboard the Carnival Triumph; and/or

h. Failure to ensure that passengers were disembarked from the Carnival Triumph within a reasonable amount of time after the vessel lost power;

  and/or

 i. Failure to provide passengers aboard the Carnival Triumph with adequate food and drinking water, causing food poisoning and severe discomfort; and/or

 j. Failure to provide adequate ventilation onboard the Carnival Triumph, such that passengers suffered from severe discomfort and injury caused by noxious odors and gases; and/or

 k. Failure to provide adequate sanitation services to passengers aboard the Carnival Triumph, such that the passengers were subjected to conditions of squalor presenting a significant risk to the passengers reasonable health and safety; and/or

 l. Knowing, as a result of previous similar incidents, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

 m. Violating the International Safety Management Code by failing to have and/or adequately implement and follow their Safety Management System Manual.

28. At all material times, Defendant Carnival had exclusive custody and control of the vessel, Carnival Triumph.

29. Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in

the exercise of reasonable care under the circumstances should have learned of them and corrected them.

30. As a result of the negligence of Carnival, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future. Further, Plaintiffs lost the value of their vacation cruise for which he incurred expenses, including, but not limited to the cost of the cruise ticket for himself and others as well as transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

### COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs 1 through 30 as though alleged originally herein and further allege:

31. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs and all others similarly situated were placed in an immediate risk of physical harm.  Said risk of physical harm included but is not limited to:  disease, dehydration, illness, injury, and/or death.

32. Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs and all others similarly situated, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares.

33. During the time period alleged in the complaint, Plaintiffs were forced to eat rotten food, live in squalid conditions, not bathe, not adequately dispose of human waste, and were subjected to tropical heat and humidity without the benefit of climate control, all of which created an immediate risk of physical injury.

34. Plaintiffs' and those similarly situated aboard the Carnival Triumph were placed in the zone of danger as a result of the squalor that existed on the vessel.  Each Plaintiff and those similarly situated was in close proximity to conditions which did cause or could have caused serious physical injury and/or illness.

35. Plaintiffs fear of death, developing serious illness or disease and of experiencing mental, emotional and/or physical harm was genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of Carnival. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, rapid heartbeat, and vomiting.

36. As a result of the negligence inflection of emotional distress by Carnival, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of

life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future. Further, Plaintiffs lost the value of their vacation cruise for which he incurred expenses, including, but not limited to the cost of the cruise ticket for himself and others as well as transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs 1 through 30 as though alleged originally herein and further allege

37. As set forth above, the actions of Carnival were intentional or reckless and inflicted mental suffering. Carnival's conduct in both putting to sea with an unseaworthy vessel and further subjecting Plaintiffs to the squalor aboard the *Triumph* for many extra days instead of going to the nearest port and disembarking Plaintiffs and all those similarly situated was outrageous. This conduct is made more outrageous by the fact that this conduct was motivated by Carnival's desire to save money rather than ensure the reasonable safety and welfare of its passengers.

38. Carnival's conduct caused the Plaintiffs, and all those similarly situated to suffer through the deplorable conditions alleged above.

39. All of the conditions previously alleged and endured by the Plaintiffs caused severe suffering and emotional distress as these conditions not only led to immediate risk of physical harm but also caused severe discomfort, anxiety, feelings of helplessness/hopelessness as the Triumph drifted at sea. Further, these conditions caused severe suffering as they robbed Plaintiffs of their dignity by preventing them from bathing or relieving themselves in a normal manner and forcing them to eat rotten food.

40. The conduct of Carnival as alleged above is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Put simply, Carnival recklessly and intentionally put more than 3,000 passengers through a five (5) day living nightmare so it could protect its bottom line.

41. As a result of the intentional inflection of emotional distress by Carnival, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future. Further, Plaintiffs lost the value of their vacation cruise for which he incurred expenses, including, but not limited to the cost of the cruise ticket for himself and others as well as transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

> *Respectfully submitted*,
>
> LIPCON, MARGULIES,
> ALSINA & WINKLEMAN, P.A.
> Attorneys for Plaintiffs
> Suite 1776, One Biscayne Tower
> 2 South Biscayne Boulevard
> Miami, Florida 33131
> Telephone: (305) 373-3016
> Fax:           (305) 373-6204
> Email:     mwinkleman@lipcon.com
> Website:  www.Lipcon.com
>
> By     */s/Michael Winkleman*
>            MICHAEL A. WINKLEMAN
>            FLORIDA BAR NO. 36719

**Date: February 18, 2013**